# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
GALLUP, TOZZI, and HAM
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Major KENDALL M. AMAZAKI, JR.**
**United States Army, Appellant**

ARMY 20070676

Headquarters, 8th Theater Sustainment Command
Donna M. Wright, Military Judge
Lieutenant Colonel James H. Robinette II, Staff Judge Advocate (pre-trial)
Colonel James W. Herring, Jr., Staff Judge Advocate (post-trial)

For Appellant:  Colonel Christopher J. O'Brien, JA; Lieutenant Colonel Steven C. Henricks, JA; Captain Nathan J. Bankson, JA; Captain William J. Stephens, JA (on brief).

For Appellee:  Colonel Denise R. Lind, JA; Lieutenant Colonel Francis C. Kiley, JA; Major Karen J. Borgerding, JA (on brief).

31 March 2009

---------------------------------
OPINION OF THE COURT
---------------------------------

HAM, Judge:

A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of failing to obey a lawful regulation (four specifications), conduct unbecoming an officer, and mishandling classified information (four specifications) in violation of Articles 92, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 933, and 934 [hereinafter UCMJ].  The military judge sentenced appellant to a dismissal and confinement for one year.  Although a pretrial agreement limited confinement to ten months, the convening authority approved only six months confinement and a dismissal.  The case is before the court for review pursuant to Article 66, UCMJ.

We have considered the entire record of trial, appellant's two assignments of error, the matter appellant personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and the government's reply thereto.  We find appellant's

assignments of error merit discussion and relief.[1] We hold, as a matter of due process, appellant was not on fair notice that his conduct, arising from simply negligent possession of child pornography, violated Article 133, UCMJ, under the facts and circumstances of this case. Accordingly, we set aside and dismiss Charge II and its Specification alleging a violation of Article 133, UCMJ, and reassess appellant's sentence.

## FACTS

In 2001, appellant was an Apache helicopter pilot in command of Headquarters and Headquarters Company, 160th Special Operations Aviation Regiment (Airborne), Fort Campbell, Kentucky. He deployed to Afghanistan for Operation Enduring Freedom where, according to his annual personnel evaluation, he "performed brilliantly" and provided "inspirational leadership" to his soldiers during combat operations. While redeploying from Afghanistan in late December 2001 or January 2002, appellant packed some classified materials in his bags that he brought to his residence in Kentucky.[2]

On 1 August 2002, appellant conducted a permanent change of station move from Fort Campbell to Special Operations Command Pacific, Camp H.M. Smith, Hawaii. Appellant shipped the classified materials to Hawaii with his household goods, and once again maintained them at his residence in Aiea, Hawaii. In July 2005, after appellant moved to another location in Hawaii, his then-spouse consented to a command search of the residence. The government recovered the classified materials during the search. As a result, appellant was charged with and pled guilty to numerous offenses involving his mishandling of classified information both in Kentucky and Hawaii.[3]

---

[1] Appellant's first assignment of error alleged the specification failed to state an offense, in part because appellant lacked fair notice the charged acts violate Article 133, UCMJ. His second assignment of error alleged that his plea to the specification was improvident. We agree that Charge II and its Specification cannot stand.

[2] The classified materials included eighteen U.S. Army award memoranda and narrative justifications and electronic media consisting of a ZIP 100 megabyte diskette, a 3.5 inch floppy diskette, and a CD-R disk. The classified information on the electronic media described classified techniques, tactics, and procedures and particular means and methods of ongoing operations.

[3] Appellant's offenses included four specifications of failure to obey a lawful regulation in violation of Article 92, UCMJ, to wit, Army Regulation 380-5, Department of the Army Information Security Program. The four specifications

(continued . . .)

Also discovered in July 2005 at appellant's residence was a second ZIP 100 megabyte diskette that contained over 150 images of adult pornography and eight images of child pornography. Accordingly, in addition to the charges and specifications alleging mishandling of classified information, the government charged appellant with violating Article 134, UCMJ, by knowingly possessing child pornography in violation of 18 U.S.C. § 2252A.[4] On the date the convening authority referred appellant's charges and specifications to trial, the government dismissed and replaced the Article 134, UCMJ, violation with a charge alleging appellant violated Article 133, UCMJ, by "wrongfully and dishonorably possess[ing]" a diskette containing eight images of child pornography, "negligently fail[ing] to note that there was child pornography" on the diskette, "negligently fail[ing] to eliminate" child pornography from the diskette, and "negligently leaving . . . child pornography on the [d]iskette in his place of residence in such a manner that other persons could easily access" the images.[5] Appellant pled guilty to this

_____

(. . . continued)
were divided both by appellant's location on the dates in question (Kentucky and Hawaii), and by the medium on which the materials were maintained (award memoranda and electronic materials). In addition, appellant was charged under Article 134, UCMJ, with four specifications – divided into two specifications for each location (Kentucky and Hawaii) – of mishandling classified information in violation of 18 U.S.C. §§ 793(e) and (f) (2002), otherwise known as The Espionage Act. The military judge wisely treated the four specifications in violation of Article 92, UCMJ as one for sentencing purposes with the four specifications in violation of Article 134, UCMJ, each of which carried a maximum punishment, *inter alia*, of ten years confinement.

[4] The Child Pornography Prevention Act.

[5] The Charge and Specification, as amended prior to referral, read as follows:

> AMENDED [sic] CHARGE II: VIOLATION OF ARTICLE 133, UCMJ
>
> Specification: In that Major Kendall M. Amazaki, Junior, United States Army, did, at or near Fort Campbell, Kentucky, between on or about 31 January 2002 and on or about 31 July 2002, and at or near Honolulu, Hawaii, between on or about 1 August 2002 and on or about 7 July 2005, wrongfully and dishonorably possess a 100 ZIP [megabyte] [d]iskette, which contained 8 images of child pornography, including:

(continued . . .)

3

offense and did not challenge it at trial. All parties at trial agreed the maximum period of confinement for this offense was one year. The total potential maximum confinement for all offenses to which appellant pled guilty was 41 years.

During the providence inquiry on this offense, appellant revealed a friend gave him the diskette containing child pornography, but appellant maintained he was not aware any images of child pornography were on the diskette. Rather, appellant believed the diskette only contained adult pornography. Appellant's unrebutted statements during both the providence inquiry and his unsworn statement in the

---

(. . . continued)
> !ANGEL.jpg
> ATCAMP.jpg
> _82.jpg
> _!!!!7SIS.jpg
> _SIS&I~1.jpg
> 113.jpg
> 123.jpg
> T001.jpg, by possessing over 150 images of pornography by negligently failing to note that there was child pornography among such images, by negligently failing to eliminate said images of child pornography from the [d]iskette, and by negligently leaving said images of child pornography on the [d]iskette in his place of residence in such a manner that other persons could easily access said images of child pornography.

Although the specification alleges "wrongful" possession, which in other circumstances may "imply guilty knowledge," *see United States v. Russell*, 47 M.J. 412, 413 (C.A.A.F. 1998), the specification makes clear the "wrongful" conduct at issue is negligence. *See also United States v. Forney*, __M.J.__, slip op. at 4-5 (C.A.A.F. 28 March 2009) (setting forth a specification in violation of Article 133, UCMJ, alleging "wrongful" receipt and possession of child pornography that included as elements both knowledge of the receipt and possession as well as knowledge that what was received and possessed was child pornography). Knowing possession is not an element of the offense as charged in this case and the military judge did not advise appellant that it was a required element. In its brief to this court, the government concedes this point, and concedes as well that "[b]ased on the record of trial, it is clear that appellant *did not know* that he possessed child pornography" (emphasis in government brief). Rather, the military judge advised appellant "[a]n act is wrongful if done without legal justification or excuse," and "'[n]egligently' means an act or failure to act by a person under a duty to use due care which demonstrates a lack of care which a reasonably prudent person would have used under the same or similar circumstances."

4

sentencing proceeding revealed he first became aware of the pornographic images of children contained on the diskette in connection with his court-martial. Nonetheless, appellant agreed that he "should have known" about the images and "got [sic] rid of them," and that he was negligent by having the images on the diskette. Appellant agreed with the military judge that he "had a duty when somebody gave [him] a diskette to make sure there was nothing illegal on the diskette."[6] Appellant said he kept the diskette in an unlocked home desk drawer easily accessible to visitors and admitted leaving the images on the diskette was conduct unbecoming an officer and a gentleman. There was no colloquy concerning whether or how appellant was on notice that his conduct was criminal, or why appellant's conduct constituted conduct unbecoming an officer and a gentleman. The stipulation of fact does nothing to illuminate this element.

Appellant now asserts the allegation of negligent possession, negligent failure to delete, and negligent storage of child pornography "fails to state an offense" because he was not on notice that such conduct was punishable under Article 133, UCMJ. Although appellant raises this issue for the first time on appeal,[7] we agree this specification must be set aside.

## LAW AND DISCUSSION

Appellant's first assignment of error blends the related issues of "failure to state an offense," which focuses on the adequacy of a specification, and "void for vagueness," which focuses on whether there is fair notice that the charged conduct is criminal. *See generally United States v. Saunders*, 59 M.J. 1, 6-9 (C.A.A.F. 2003) (discussing, with regard to Article 134, UCMJ, the distinction between "fair notice that one's conduct is subject to criminal sanction" and the notice of a specification's elements). The former is concerned with pleading and double jeopardy.[8] The latter

---

[6] The file names of the images in the specification do not obviously describe pornographic images of minor children.

[7] *See United States v. Boyett*, 42 M.J. 150, 152 (C.A.A.F. 1995) (declining to apply waiver to due process challenge to offense charged under Article 133, UCMJ). *See also United States v. Davis*, 26 M.J. 445, 446 n.1 (C.M.A. 1988) (stating due process notice issue only waived where not raised either at trial or on appeal).

[8] Whether a specification states an offense is a question of law which we review de novo. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006) (citing *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994); *United States v. Mayo*, 12 M.J. 286, 288 (C.M.A. 1982)); *United States v. Roach*, 65 M.J. 866, 869 (Army Ct. Crim. App. 2007). "A specification states an offense if it alleges, either expressly or by

(continued . . .)

is based upon the Due Process Clause of the Fifth Amendment,[9] and that is where we focus our discussion.  U.S. Const. amend. V.

The elements of Article 133, UCMJ, are deceptively simple: first, the accused must do or omit to do certain acts; and second, under the circumstances, the acts or omissions must constitute conduct unbecoming an officer. *Manual for Courts-Martial, United States*, (2002 ed.) [hereinafter *MCM*], Part IV, para. 59(b).  The focus of Article 133, UCMJ, a purely military offense, is the effect of the accused's conduct on his status as an officer.  *United States v. Conliffe*, 67 M.J. 127, 132 (C.A.A.F. 2009).  "An officer may be charged under Article 133[, UCMJ,] for conduct which may not constitute a violation of other provisions of the Code." *United States v. Taylor*, 23 M.J. 314, 318 (C.M.A. 1987).  The gravamen of Article 133, UCMJ, is "[a]n officer's conduct that disgraces him personally or brings dishonor to the military profession affects his fitness to command the obedience of his subordinates so as to successfully complete the military mission." *Forney*, __M.J.__, slip op. at 8.  "The test [for Article 133, UCMJ,] is whether the conduct has fallen below the standards established for officers."  *Conliffe*, 67 M.J. at 132 (citing *Taylor*, 23 M.J. 318).

Before an officer can be convicted of an offense under Article 133, UCMJ, due process requires "'fair notice' that an act is forbidden and subject to criminal sanction." *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (citing *United*

---

(. . . continued)
implication, every element of the offense, so as to give the accused notice and protection against double jeopardy." *Crafter*, 64 M.J. at 211 (citing *Dear*, 40 M.J. at 197; Rule for Courts-Martial (R.C.M. 307(c)(3)).  Failure to object at trial does not waive the issue.  R.C.M. 907(b)(1)(B).  "A flawed specification first challenged after trial, however, is viewed with greater tolerance than one which was attacked before findings and sentence." *United States v. Watkins*, 21 M.J. 208, 209 (C.M.A. 1986) (citations omitted).  Specifications challenged for the first time on appeal are "liberally construed" in favor of validity, *id.*, and may be sustained "if the necessary facts appear in any form or by fair construction can be found within the terms of the specification." *United States v. Mayo*, 12 M.J. 286, 288 (C.M.A. 1982) (citations omitted).  "In addition to viewing post-trial challenges with maximum liberality, we view standing to challenge a specification on appeal as considerably less where an accused knowingly and voluntarily pleads guilty to the offense." *Watkins*, 21 M.J. at 210 (citing *United States v. Hoskins*, 17 M.J. 134, 135 (C.M.A. 1984)); *see Roach*, 65 M.J. at 869.  Under these standards, the challenged specification may state an offense.  We do not believe, however, this is the salient issue in this case.

[9] Neither this court nor our superior court has ever held the "greater tolerance" granted to specifications challenged for the first time on appeal applies to offenses for which an appellant claims a lack of fair notice under the Due Process Clause.

6

*States v. Bivins*, 49 M.J. 328, 330 (C.A.A.F. 1998)); s*ee United States v. Anderson*, 60 M.J. 548, 554 (A.F. Ct. Crim. App. 2004). The question is whether a "reasonable military officer would have no doubt that the activities charged constituted conduct unbecoming an officer." *United States v. Frazier*, 34 M.J. 194, 198 (C.M.A. 1994) (footnote omitted) (citing *Parker v. Levy*, 417 U.S. 733, 757 (1974)). *See also Boyett,* 42 M.J. at 161 (Cox, J., concurring); *United States v. Hartwig*, 39 M.J. 125, 130 (C.M.A. 1994) (finding officer was on notice that sending a sexually suggestive letter to a stranger amounted to conduct unbecoming an officer); *United States v. Modesto*, 39 M.J. 1055, 1061 (A.C.M.R. 1994) (finding that, depending on the time, place, circumstances, and purpose, cross-dressing could violate Article 133, UCMJ). Notice that conduct is unbecoming may be provided by custom, regulation, or otherwise. *United States v. Guaglione*, 27 M.J. 268, 272 (C.M.A. 1988) (citation omitted). *See also United States v. Rogers*, 54 M.J. 244, 256 (C.A.A.F. 2000) (noting that, although an officer must have fair notice his conduct is criminal, proof of a custom or regulation is not necessarily required). *Cf. Vaughan*, 58 M.J. at 31 (listing sources of notice under Article 134, UCMJ: federal law, state law, military case law, military custom and usage, and military regulations).

In *Parker v. Levy*, the Supreme Court rejected a general challenge to Article 133, UCMJ, holding that it was not void for vagueness under the Due Process Clause of the Fifth Amendment. 417 U.S. at 733.

> Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged.

*Id.* at 757 (quoting *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32-33 (1963) (citations omitted)). In *Parker*, the Supreme Court left open to challenge whether specific, charged acts violate Article 133, UCMJ. "Naturally, any conduct charged as a violation of Article 133 or 134[, UCMJ], respectively, must be such that an accused servicemember is fairly on notice of its proscription." *Boyett*, 42 M.J. at 156 (Cox, J., concurring) (citing *Parker*, 417 U.S. at 752-54). *See also United States v. Zander*, 46 M.J. 558, 560-61 (N.M. Ct. Crim. App. 1995) (noting that in "determining the vagueness of a military disciplinary statute . . . one must analyze the alleged conduct 'to determine whether it is disgraceful and compromising as contemplated by the statute'") (quoting *United States v. Van Steenwyk*, 21 M.J. 795, 801-02 (N.M.C.M.R. 1985)). *Cf. Vaughan*, 58 M.J. at 31 ("[the Court of Appeals for the Armed Forces (CAAF)] has held that as a matter of due process, a service member must have fair notice that his conduct is punishable before he can be charged under Article 134[, UCMJ,] with a service discrediting offense") (citations and internal quotations omitted). "Each case must necessarily

be decided on its own merit." *Van Steenwyk*, 21 M.J. at 801 (citing *United States v. Pitasi*, 44 C.M.R. 31 (1971)).

In rejecting the general challenge to the constitutionality of Article 133, UCMJ, "[t]he Supreme Court noted that [the CAAF] and other military courts had 'narrowed the very broad reach of the literal language of [Articles 133 and 134, UCMJ,] and at the same time had supplied considerable specificity by way of examples of the conduct which they cover.'" *Rogers*, 54 M.J. at 256 (quoting *Parker*, 417 U.S. at 754).

> To constitute therefore the conduct here denounced, the act which forms the basis of the charge must have a double significance and effect. Though it need not amount to a crime, it must offend so seriously against law, justice, morality, or decorum as to expose to disgrace, socially or as a man, the offender, and at the same time must be of such a nature or committed under such circumstances as to bring dishonor or disrepute upon the military profession which he represents.

*Id.* (quoting William Winthrop, *Military Law and Precedents* 711-12 (2d ed. 1920 Reprint).

The discussion in the Manual for Courts-Martial also "narrows the reach" of Article 133, UCMJ. The Article includes actions which are "indicated by acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, or cruelty." *MCM*, Part IV, para. 59(c)(2). "Not every deviation from the high standard of conduct expected of an officer constitutes conduct unbecoming an officer." *United States v. Shober*, 26 M.J. 501, 503 (A.F.C.M.R.) (citation omitted), *aff'd*, 23 M.J. 249 (C.M.A. 1986) (summary disposition) (holding that officer who took consensual nude photographs of civilian subordinate was not guilty of violating Article 133, UCMJ). "In general, it must be so disgraceful as to render an officer unfit for service." *Guaglione*, 27 M.J. at 271 (citations omitted) (holding that officer visiting house of prostitution with enlisted soldiers but doing "nothing more than look[ing] and comment[ing] on the physical charms of the hostesses" does not constitute conduct unbecoming an officer). Article 133, UCMJ was never intended as a catchall for every conceivable improper act or misdeed. *Cf. United States v. Herron*, 39 M.J. 860, 862 (N.M. Ct. Crim. App. 1994) (referring to Article 134, UCMJ). To allow it to become so would invite reappraisal of its constitutionality. *Cf. United States v. Guerrero*, 33 M.J. 295, 299 (C.M.A. 1991) (Everett, C.J., concurring in part and dissenting in part) (warning that an overly broad application of Article 134, UCMJ, is an invitation for the Supreme Court to reexamine its holding in *Parker v. Levy*).

8

Applying these principles, an officer is certainly on notice his conduct is unbecoming and violates Article 133, UCMJ, by knowingly possessing actual or virtual child pornography, and may be punished for that violation regardless of whether the same conduct violates a separate federal statute such as 18 U.S.C. §2252A.  *See Forney,* __M.J.__, slip op. at 8 (holding that receipt and possession of virtual child pornography may constitute conduct unbecoming an officer).  *See also United States v. Henley*, 53 M.J. 488, 492 (C.A.A.F. 2000) (affirming conviction under Article 133, UCMJ, for possession of child pornography magazines in unlocked government desk – no indication such possession was unknowing).  *See also United States v. Bilby*, 39 M.J. 467, 470 (C.M.A. 1994) (finding that underlying conduct of soliciting another to violate a federal statute prohibiting distribution of child pornography violated Article 133, UCMJ, regardless of constitutionality of the federal statute); *United States v. Mazer*, 62 M.J. 571, 575 (N.M. Ct. Crim. App. 2005) (affirming conviction for conduct unbecoming an officer where officer "searched for, and received, images of graphic child pornography . . . 'regardless of the constitutionality of the federal statute'") (quoting *United States v. Sollman*, 59 M.J. 831 (A.F. Ct. Crim. App. 2004).  *Cf. United States v. Mason*, 60 M.J. 15, 20 (C.A.A.F. 2004) (stating that knowing "possession of 'virtual' child pornography can, like 'actual' child pornography, be service-discrediting or prejudicial to good order and discipline"); *United States v. Sapp*, 53 M.J. 90, 92 (C.A.A.F. 2000) (finding that knowing possession of images depicting sexually explicit conduct by minors is service discrediting conduct in violation of Article 134, UCMJ, even where the conduct did not violate federal law).[10]

---

[10] Whether the prosecution can prove knowing possession by "deliberate avoidance" is an open question in the military courts, but at least one federal circuit has answered in the affirmative.  *United States v. Carani*, 492 F.3d 867, 873 (7th Cir. 2007) (affirming conviction for knowing possession of child pornography and decision to give deliberate avoidance, or "ostrich" instruction). "Deliberate avoidance is more than mere negligence, the defendant must have deliberately avoided acquiring knowledge of the crime being committed by cutting off his curiosity through an effort of the will. . . . Deliberate avoidance is not a standard less than knowledge; it is simply another way that knowledge may be proven." *Id.* (quotation and citations omitted).  Military courts have applied deliberate avoidance to drug and absence offenses.  *United States v. Adams*, 63 M.J. 223 (C.A.A.F. 2006) (applying deliberate avoidance to absence offense under Article 86, UCMJ); *United States v. Newman*, 14 M.J. 474, 478 (C.M.A. 1983) (wrongful use and possession of drugs and drug paraphernalia).  *See also United States v. Brown*, 50 M.J. 262, 266 (C.A.A.F 1999) (holding that in order to raise deliberate avoidance or ignorance, there must be some evidence that the accused was "subjectively aware of a high probability of the existence of illegal conduct; and  . . . purposefully contrived to avoid learning of the illegal conduct") (internal quotation omitted).  We need not

(continued . . .)

The same cannot be said of the conduct alleged in this case. Appellant was not on notice that he was subject to criminal prosecution by failing to discover that, unbeknownst to him and without requesting, seeking, or searching for such images, a diskette a friend gave him contained illegal child pornography. Specifically, we hold appellant was not on notice the charged conduct – "negligently failing to note" the diskette contained child pornography; "negligently failing to eliminate said images of child pornography from the [d]iskette;" and "negligently leaving said images of child pornography on the [d]iskette in his place of residence in such a manner that other persons could easily access images of child pornography" – would subject him to criminal sanction under Article 133, UCMJ.[11] Further, we disagree appellant was on notice he had any duty to use due care to review the diskette his friend provided to "make sure there was nothing illegal" on it. There is no custom, regulation, or otherwise to the contrary. *See Guaglione*, 27 M.J. at 273.[12] Simply

---

(. . . continued)

and do not decide in this case whether deliberate avoidance applies to the offense of knowing possession of child pornography, or whether it is raised here. The government made the charging decisions in this case, and elected to change the original charge of knowing possession to a charge involving negligent possession.

[11] The military judge instructed appellant that negligence requires "an act or failure to act by a person under a duty to use due care which demonstrates a lack of care which a reasonably prudent person would have used under the same or similar circumstances." *See MCM*, Part IV, para. 16c (3)(c ) (defining negligence in context of dereliction in the performance of duties); *See also MCM*, Part IV, para. 85(c)(2) (defining negligence in context of negligent homicide). Whether a duty exists is a question of military substantive law, *United States v. Martinez*, 52 M.J. 22, 25 (C.A.A.F. 1999) (citing *United States v. Martinez,* 42 M.J. 327, 330 (C.A.A.F. 1995)), for "[w]here there is no legal duty to act there can be no neglect." *MCM*, Part IV, para 44c(2)(a)(ii) (manslaughter). *See United States v. Dallman*, 34 M.J. 274, 275 (C.M.A. 1992) (holding that violation of a self-imposed duty is not a crime under Articles 92, 133, or 134, UCMJ).

[12] Similar to fair notice under Article 133, UCMJ, a military duty "may be imposed by treaty, statute, regulation, lawful order, standard operating procedure, or custom of the service." *MCM*, Part IV, para 16c(3)(a). A "duty to use due care" may arise from a military duty, but military law also recognizes duties imposed by common law. *See United States v. Valdez*, 40 M.J. 491, 495 (C.M.A. 1994) (recognizing and adopting common law duty of parents to aid and provide medical care to their children). *See also Martinez*, 52 M.J. at 25 (finding that appellant had a parental duty as co-head of household to provide medical assistance to his non-biological

(continued . . .)

10

stated, no reasonable officer would recognize that appellant's unwitting conduct would bring dishonor or disrepute upon himself or his profession. To the contrary, any reasonable officer would doubt these acts constitute conduct unbecoming an officer. *Frazier*, 34 M.J. at 198-99.

The members of this court regularly review cases involving graphic child pornography and have the unenviable duty to view these disturbing images in order to perform our statutory responsibility under Article 66, UCMJ. We fully understand the military and societal interest in punishing those who possess and trade in the sexual abuse and exploitation of children. We hold, however, that appellant was not on fair notice that his unwitting possession of child pornography on these facts was negligent or that his conduct in failing to discover, delete, or secure these images amounted to conduct unbecoming an officer and a gentleman. Appellant's conviction under Article 133, UCMJ, cannot stand.

**CONCLUSION**

The finding of guilty to Charge II and its Specification is set aside, and that Specification and Charge are dismissed. We have reviewed the matter personally raised by appellant, and conclude it is without merit. The remaining findings are affirmed.[13]

---

(. . . continued)
child). From whatever source, a duty to use due care describes an objectively reasonable obligation recognized under the circumstances. We discern no duty on appellant's part, either inherently military or derived from common law, to "make sure there [is] nothing illegal" on computer diskettes under the facts of this case.

[13] Appellate defense counsel also noted that the Staff Judge Advocate Recommendation (SJAR) and the Promulgating Order incorrectly refer to the situs of the offense reflected in Specification 4 of Charge III (one of the Article 134, UCMJ violations). In fact, three "original" Reports of Result of Trial - each signed by a different officer - the SJAR, and the Promulgating Order all refer incorrectly to both the situs and the dates of the offense, and merely repeat verbatim Specification 3 of Charge III. Where, as here, a convening authority does not expressly address findings in his action, he implicitly approves the findings as summarized in the SJAR. *United States v. Diaz*, 40 M.J. 335, 337 (C.A.A.F. 1994); *United States v. Alexander*, 63 M.J. 269, 275 (C.A.A.F. 2008). To the extent the SJAR is mistaken, the action taken on that basis is a nullity. *See Diaz*, 40 M.J. at 337. Failure to comment on SJAR error constitutes waiver in the absence of plain error. R.C.M. 1106(f)(6); *see also Alexander*, 63 M.J. at 273. To prevail under a plain error analysis, appellant must show "(1) there was an error; (2) it was plain or obvious,

(continued . . .)

AMAZAKI – ARMY 20070676

Reassessing the sentence on the basis of the modified findings, the entire record, and in accordance with the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986), and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), to include the factors Judge Baker identified in his concurring opinion, the court affirms only so much of the sentence as provides for a dismissal and confinement for five months. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of his approved sentence set aside by this decision are ordered restored. *See* Articles 58b(c) and 75(a), UCMJ.

Senior Judge GALLUP and Judge TOZZI concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

(. . . continued)
and (3) the error materially prejudiced a substantial right." *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (citations omitted). The court will grant relief "if an appellant presents 'some colorable showing of possible prejudice.'" *Id.* (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)); *see also United States v. Wellington,* 58 M.J. 420, 427-28 (C.A.A.F. 2003). Appellant, however, concedes he has suffered no prejudice, and we find none on these facts. The charge sheet, stipulation of fact, and providence inquiry all reflect the correct dates and location. Appellant was found guilty of the offense in accordance with his plea. We will issue a corrected promulgating order that accurately reflects the correct location and dates of appellant's offenses. No further remedial action is necessary. *See United States v. Ross*, 44 M.J. 534, 537 (A.F. Ct. Crim. App. 1996) (refusing to elevate "typos" in dates to "plain error" or grounds for setting aside a convening authority's action especially in light of appellant's waiver).